

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

IN THE INTEREST OF: K.J.L.

)
)
)
)
)
)
)
)
)

No. ED110726

Appeal from the Circuit Court of
St. Charles County

Hon. W. Christopher McDonough

FILED: October 3, 2023

Introduction

N.M.L. ("Grandmother") and C.E.L., Sr. ("Grandfather") (collectively, the "Grandparents") appeal from the trial court's judgment dismissing their petition for relative adoption and termination of parental rights over their grandson, K.J.L. Grandparents raise two points on appeal arguing the trial court erred in dismissing their petition because substantial and competent evidence showed Mother abandoned or neglected K.J.L. under Section 453.040(7),[1] respectively. Because the record supported the trial court's determination that Mother neither abandoned nor neglected K.J.L., the trial court did not err in declining to terminate Mother's parental rights and thereby mooting Grandparents' petition for relative adoption. Accordingly, we affirm the trial court's judgment.

---

[1] All Section references are to RSMo (2016).

Factual and Procedural History

Mother gave birth to K.J.L. in May 2019. Grandparents are the parents of K.J.L.'s biological father ("Father"). Father moved to declare paternity, custody, and support when K.J.L. was three months old. Grandparents subsequently petitioned for third-party custody and visitation, alleging in part that Mother and Father behaved in a manner that threatened K.J.L.'s health, welfare, and safety. The trial court granted Grandparents leave to intervene and contemporaneously granted them temporary sole legal and physical custody of K.J.L.

On July 24, 2020, the parties entered into a consent judgment of paternity finding Father to be the father of K.J.L. (the "Consent Judgment"). The Consent Judgment incorporated an attached parenting plan, which awarded Grandparents sole legal and sole physical custody. The Consent Judgment granted Mother and Father supervised visitation "to be coordinated with [Grandparents] and at [Grandparents'] discretion" at Grandparents' home. The Consent Judgment required Mother to coordinate her visitation with Grandparents directly via text messaging. Specifically, the Consent Judgment stated that "[c]ommunication between [Father], [Mother], [Grandfather], and [Grandmother] concerning [K.J.L.] may be by any of the following methods: text only." The Consent Judgment further ordered Mother and Father each to pay $50 monthly in child support.

Approximately one month after the Consent Judgment was entered, Father assaulted Mother, breaking her nose and jaw. Mother believed Father went to live at Grandparents' home after he assaulted her. Mother was scared and waited until December 17, 2020 to contact Grandparents again regarding visitation. Grandparents testified that Father was not living with them at that time. Grandparents and Mother gave conflicting testimony as to Father's living situation. Grandparents testified they had loaned Mother and Father money to obtain a condominium together around the time the Consent Judgment was entered. Mother testified that

she and Father had been living together in a condominium prior to June 2020 and stopped living together following the assault.

Grandparents petitioned to terminate parental rights and adopt K.J.L. on May 12, 2021. Mother contested the termination of her parental rights and adoption. Father is incarcerated and not a party to this appeal, having consented to the termination of his parental rights and K.J.L.'s adoption. The case proceeded to trial on June 17, 2022. The trial court applied the pre-amended version of Section 453.040 for the trial on Grandparents' petition and considered the relevant six-month timeframe to be November 12, 2020 to May 12, 2021.

At trial, Grandparents argued that there was no evidence to support a finding that Mother made any efforts to maintain contact with K.J.L. Mother introduced into evidence numerous text messages exchanged between Mother and Grandparents during the relevant six-month statutory period. Specifically, multiple separate text conversations between December 17, 2020 and March 28, 2021 showed texts sent from Mother requesting to visit K.J.L., stating she missed her son and wanted to be with him. Grandparents sometimes chose not to respond to Mother's texts and other times directed her to arrange visits with K.J.L. through the Family Resource Center. Mother enrolled in a substance-abuse treatment program in April 2021. At the end of that program, Mother sent Grandparents a letter to their home-address by certified mail on May 4, 2021, requesting contact and inquiring about K.J.L.'s welfare. The letter was returned to Mother. Evidence was also adduced that after the statutory six-month period, Mother exercised supervised visitation through the Family Resource Center. On the subject of financial support, Grandparents introduced evidence that Mother did not pay child support during the statutory time period, and Grandparents rejected child support payments sent to them by Mother after the statutory six-month period.

3

Following trial, the trial court found Grandparents did not meet their burden of proof and denied Grandparents' petition to terminate Mother's parental rights. The trial court acknowledged there was conflicting evidence regarding Mother's conduct but resolved that conflict in favor of Mother given the high evidentiary standard for terminating parental rights. The trial court granted Mother's Rule 73.01(b)[2] motion for judgment on the petition's count for termination of parental rights, which was dispositive of the count for adoption. The trial court issued its judgment with written findings and conclusions of law on June 21, 2022. Grandparents did not move for a new trial or to amend the judgment. See Rule 73.01(d). Grandparents filed their notice of appeal. Prior to the judgment becoming final, Mother requested the trial court enter an order awarding her $5,000 in anticipated appellate attorneys' fees pursuant to Section 453.030.11. Following a hearing, and within thirty days of the judgment, the trial court determined that it was authorized under the statute to grant the award of appellate attorneys' fees. See Rules 75.01, 81.05(b).

Points on Appeal

Grandparents raise two points on appeal, both of which focus on the alleged lack of evidence to support the trial court's judgment. Point One argues the trial court erred in not terminating Mother's parental rights because the record contains clear, cogent, and convincing evidence that Mother willfully abandoned K.J.L., such that the judgment was not supported by competent and substantial evidence. Point Two contends the trial court erred in not terminating Mother's parent rights because clear, cogent, and convincing evidence was adduced that Mother willfully neglected K.J.L., such that the judgment was not supported by competent and substantial evidence.

---

[2] All Rule references are to Mo. R. Civ. P. (2022).

## Standard of Review

We review the termination of parental rights and adoption the same as other court-tried cases, affirming the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Int. of K.A.M.L., 644 S.W.3d 14, 20 (Mo. App. E.D. 2022) (citing S.S.S. v. C.V.S., 529 S.W.3d 811, 815 (Mo. banc 2017) (quoting Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976))).

We view the evidence in the light most favorable to the trial court's judgment and will reverse only if we are firmly convinced the judgment is erroneous. In re S.Y.B.G., 443 S.W.3d 56, 59 (Mo. App. E.D. 2014) (internal citation omitted). Terminating parental rights requires "clear, cogent, and convincing evidence" on the statutory factors that "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." Int. of D.L.P., 638 S.W.3d 82, 89 (Mo. App. E.D. 2021) (citing In re S.Y.B.G., 443 S.W.3d at 59). We defer to the trial court's factual findings and witness credibility determinations, and will consider the clear, cogent, and convincing evidence standard to be "satisfied even when evidence contrary to the trial court's finding is presented or the evidence might support a different conclusion." Id.; see also J.A.R. v. D.G.R., 426 S.W.3d 624, 626 (Mo. banc 2014) (internal quotation omitted) (noting we will defer to the trial court's findings regarding conflicting evidence). "Generally, this Court will not disturb the [trial] court's judgment unless the welfare of the child requires another disposition." Matter of M.N.V., 630 S.W.3d 829, 835 (Mo. App. E.D. 2021) (internal citation omitted).

5

I. **Termination of Parental Rights and Adoption**[3]

In proceedings for termination of parental rights, "the best interest and welfare of the child is the primary and paramount consideration." Id. Similarly, we must "construe the adoption code to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and stable home." Id. (citing Section 453.005(1)). "The United States Supreme Court has long recognized that the relationship between parent and child is one of the oldest constitutionally protected fundamental rights and liberty interests." Id. at 836 (internal citations omitted). "Therefore, a prerequisite to any adoption is the consent of the natural parents or the involuntary termination of their parental rights." Id. (internal citation omitted).

Significant to the issues presented in this appeal, consent to the adoption of a child is *not required of*

> *[a] parent who has for a period of at least six months*, for a child one year of age or older, or at least sixty days, for a child under one year of age, *immediately prior to the filing of the petition for adoption, willfully abandoned* the child *or*, for a period of at least six months immediately prior to the filing of the petition for adoption, *willfully, substantially and continuously neglected* to provide him with necessary care and protection[.]

Section 453.040(7) (emphasis added).[4]

Hence the importance of the parties' focus on the six-month statutory period referred to throughout this appeal. "It is well established that 'abandonment' and 'neglect' as used in [S]ection 453.040 are used in the disjunctive; thus, either ground, if supported by substantial

---

[3] The parties dispute the timeliness of one another's appellate filings. We find our records demonstrate both parties timely filed within their respective deadlines. See Rules 44.01, 84.05.

[4] This provision of Section 453.040 was amended subsequent to the filing of the petition in this case. The amended statute now refers to the standards for abandonment and neglect set forth in Section 211.447.

evidence, will obviate the need for parental consent to an adoption." <u>Matter of M.N.V.</u>, 630 S.W.3d at 836 (internal citation omitted). The burden to prove abandonment or neglect is on the party seeking to terminate the parent-child relationship. <u>Id.</u> (internal citation omitted). A court must determine the parent's intent in order to assess whether abandonment or neglect has occurred. <u>Id.</u> at 837 (internal citation omitted). Inferences of a parent's intent may be drawn from "all of the evidence of the parent's conduct before, during, and after the statutory period . . . [but] the greatest weight is given to conduct during the statutory period and the least weight to conduct occurring after the petition for termination is filed." <u>Id.</u> (internal citation omitted).

Here, Grandparents maintain the trial court erred in finding that Mother did not abandon or neglect K.J.L. within the six-month statutory period so as to support termination of Mother's parental rights and negate the consent requirement for adoption.

<u>A.</u>     <u>Abandonment</u>

"Abandonment has been defined as the voluntary and intentional relinquishment of custody of the child to another with the intent to never again claim the rights of a parent or perform the duties of a parent." <u>Id.</u> (internal citation omitted). Courts have also defined abandonment as "the intentional withholding by the parent of his or her care, love, affection, protection, and presence, without just cause or excuse." <u>Id.</u> (internal citation omitted).

Grandparents argue the trial court improperly placed greater relevance on Mother's efforts to request visitation *after* the six-month statutory period, whereas the trial court should have put more weight on Mother's "minimal efforts" during the statutory period. Grandparents overlook the plain evidence of the text messages sent by Mother to Grandparents during the relevant statutory period of November 12, 2020 to May 12, 2021. These text messages demonstrate Mother's repeated attempts to arrange visits with K.J.L. and check on his welfare.

Mother identified fifteen distinct text conversations on different dates between December 17, 2020 and March 28, 2021 in which Mother texted Grandparents, including a request to see K.J.L. for Christmas, a request to arrange FaceTime calls, and statements that she missed K.J.L. and wanted to be with him. The record shows that these communications often lacked a timely response from Grandparents. While the trial court's judgment does refer to Mother's exercise of supervised visitation through the Family Resource Center after the six-month statutory period, Missouri judicial precedent permits the trial court to consider evidence of Mother's conduct before, during, and after the statutory period. We are not persuaded that the trial court's findings and conclusions suggest that the trial court gave improper weight to Mother's communications and visitation efforts after Grandparents filed their petition. See id. Indeed, Grandparents admit that Mother contacted them for visits with K.J.L. during the six-month statutory period but take issue with Mother's failure to arrange for supervised visits through the Family Resource Center as Grandparents requested. Grandparents' assertion of Mother's abandonment of K.J.L. on this basis is unavailing because the Consent Judgment did not require Mother to arrange visits through the Family Resource Center, and Mother followed the express directives set forth in the Consent Judgment. While the Consent Judgment granted Grandparents significant discretion over visitation, the Consent Judgment *explicitly and exclusively* directed Mother to text Grandparents to arrange visits *at their own home*. We cannot find error in the trial court's rejection of Grandparents' argument that Mother's failure to seek visitation outside of the terms of the Consent Judgment somehow demonstrates a lack of intent by Mother to maintain a parental relationship with K.J.L. See id.

The trial court also found significant that Grandparents' initial claim that Mother made *no* effort to visit K.J.L. during the relevant six-month period was convincingly refuted by the

8

record. The trial court found the text messages in the record clearly showed Mother put forth some efforts to arrange for visitation with K.J.L., and often had no response or cooperation from Grandparents.

Missouri law is clear that the party seeking nonconsensual adoption may not create the grounds for it. Int. of A.R.M., 750 S.W.2d 86, 90 (Mo. App. E.D. 1988). "A long line of cases in Missouri and other states hold that when a custodian parent hinders communication with the other parent, then an abandonment cannot occur." In re Adoption of H.D.D., 590 S.W.3d 360, 370 (Mo. App. S.D. 2019) (en banc) (internal quotation omitted). Indeed, it would be disingenuous for a petitioner seeking a nonconsensual adoption to prevent the parent from communicating with the child and then claim that the parent's lack of communication established grounds for abandonment.

In re Adoption of H.D.D. is instructive. There, the Sothern District reversed a trial court's judgment terminating a mother's parental rights and granting relative adoption where the mother presented evidence of texts, motions, and visitation attempts showing that she had not abandoned her son, who was on the severe level of the autism spectrum. In re Adoption of H.D.D., 590 S.W.3d at 371. The Southern District found the mother attempted to contact her son through her other children, as the son could not be texted or visited without the father's assistance. Id. However, the prospective adoptive stepmother undermined the mother's efforts by tearing up letters and helping one of the mother's other children change emails and phone numbers, the latter of which were the only two ways that mother was attempting to contact her children at the time. Id.

Here, the trial court found Mother presented evidence in the form of text messages that she tried to contact and visit K.J.L. during the relevant six-month period, but her requests were

9

sometimes ignored or otherwise rebuffed by Grandparents. See id.; Int. of A.R.M., 750 S.W.2d at 90. Although Grandparents deny that they ever changed their phone numbers, address, or other contact information at any time while caring for K.J.L., the record of the text messages and the returned certified mail supports the trial court's conclusions. See In re Adoption of H.D.D., 590 S.W.3d at 370–71. Further, Grandparents mischaracterize the law in Int. of A.R.M. by suggesting that any hindrance on their part would be legally irrelevant. Our Court in Int. of A.R.M. found that while there was some evidence of interference by the prospective adopters, that evidence was overwhelmed by other evidence clearly demonstrating the father's abandonment. Specifically, the alleged evidence of interference was deemed irrelevant *under the particular facts of that case* in light of a record that was replete with other substantial evidence of abandonment, including the father's murder of his child's mother. See Int. of A.R.M., 750 S.W.2d at 90. The record here is not replete with substantial evidence of Mother's abandonment of K.J.L.

Grandparents additionally argue on this point that the trial court failed to conduct a best-interests analysis. However, a trial court need not reach an analysis of whether the bests interest of the child requires a change in custody and termination of parental rights where there has been no finding of abandonment. See Int. of D.L.P., 638 S.W.3d at 95 (citing In re S.Y.B.G., 443 S.W.3d at 59) ("We may not assess the best interests of the children until *after* the State [or petitioner] has proven grounds for termination exist."). Point One is denied.

B.    Neglect

In the context of Section 453.040(7), neglect "focuses on physical deprivation or harm, and requires a finding that the parent intended to forego the parental duties of providing 'care and protection' including both the obligation to provide financial support for a minor child, as

10

well as the obligation to maintain meaningful contact with the child." Matter of M.N.V., 630 S.W.3d at 837 (internal citation omitted). "Providing care and protection requires a parent to provide for the child's health, welfare, and maintenance; and it suggests having concern for, interest in, and attachment to the child." Id. at 839 (internal citation omitted). Further, the neglect must be "willful," meaning intentional, deliberate, and without just cause or excuse, and that evinces a settled purpose to forego parental duties. In Int. of F.L.M., 561 S.W.3d 474, 479 (Mo. App. E.D. 2018) (internal citation omitted).

Here, Grandparents argue there exists substantial evidence of willful neglect because, since K.J.L. was three months old, Mother did not send K.J.L. any gifts or cards, did not ask for updates on his health or wellbeing, did not offer to assist with payment for daycare, and did not provide diapers, food, or clothing or money for medical needs. However, the trial court found Mother credibly testified that she at least occasionally sent K.J.L. holiday and birthday gifts during the six-month statutory period. See Int. of D.L.P., 638 S.W.3d at 89 (noting we defer to the trial court's credibility determinations). "[F]inancial contributions, no matter how minimal, demonstrate a parent's intent to continue the parent-child relationship." Matter of M.N.V., 630 S.W.3d at 839 (quoting E.K.L. v. A.L.B., 488 S.W.3d 764, 779 (Mo. App. W.D. 2016)). As the trial court noted, it was proper and understandable that Grandparents provided for the vast majority of K.J.L.'s needs *as that fact was contemplated by the Consent Judgment*, which awarded Grandparents temporary full legal and physical custody and only required Mother to pay $50 monthly in child support. We acknowledge that Mother did not consistently make the required child-support payments during the relevant statutory period, which occurred during the COVID-19 pandemic when Mother was twenty-one years old. But the trial court noted that when Mother later obtained employment, she sent payment of $550 to Grandparents, who

11

refused to accept the payment. The trial court properly considered these facts as evidence of Mother's intent to provide support for K.J.L., even though payment was sent after the six-month statutory period. See id. We do not find the trial court erred in finding Mother made at least some effort to financially contribute to supporting K.J.L. See id.

Additionally, Grandparents suggest that Mother's lack of proven sobriety at the time of trial also supported termination of her parental rights. We note the record contains evidence of Mother's participation in substance-abuse treatment. We also note the absence of any evidence that Mother's issues with substance abuse exposed K.J.L. to harm during the relevant statutory period when K.J.L. lived with Grandparents or thereafter when Mother was able to have visitation with K.J.L. See e.g., In Int. of K.M.A.-B., 493 S.W.3d 457, 469 (Mo. App. E.D. 2016) (internal quotation omitted) (noting "[p]oor conduct or character flaws are not relevant unless they could actually result in future harm to the child" and a trial court may not terminate a parent's fundamental liberty interest in preserving the parent-relationship on the basis of speculation rather than verifiable facts clearly establishing the parent's condition and how it impacts their present and future ability to adequately parent).

"Termination of parental rights is among the most serious acts that a court can undertake." Matter of M. N. V., 630 S.W.3d at 836 (internal citation omitted); see also In re K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004) (internal quotation omitted) ("The termination of parental rights has been characterized as tantamount to a 'civil death penalty.'"). The trial court acknowledged that Mother has been far from a model parent, but further noted that the close facts of this case illustrate why Missouri courts have repeatedly cautioned that claims of abandonment or neglect that remove the need for parental consent to adoption are generally not compatible with cases like this where child custody previously has been taken from a parent by

12

court order limiting the parent's ability to be involved in the child's care, upbringing, and support. See, e.g., In re Adoption of N.L.B. v. Lentz, 212 S.W.3d 123, 129 (Mo. banc 2007) (internal citation omitted) (noting "abandonment is generally not compatible with a case where custody has been taken from a parent involuntarily by court order"); see also In re Adoption of H.D.D., 590 S.W.3d at 370 (internal quotation omitted). Here, viewing the record in the light most favorable to the judgment, we are unwilling to hold that the trial court erred in finding Grandparents failed to prove Mother abandoned or neglected K.J.L. under Section 453.040(7) and thereby granting Mother's motion for judgment in her favor. See Int. of K.A.M.L., 644 S.W.3d at 20.[5] Point Two is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Presiding Judge

Michael E. Gardner, J., concurs.
Renée D. Hardin-Tammons, J., concurs.

---

[5] Our affirmance of the trial court's judgment maintains the status quo of the Consent Judgment and corresponding Parenting Plan entered in 2020. We caution the parties that they remain subject to the requirements of the Consent Judgment and Parenting Plan unless modified by the trial court. We caution Grandparents that Missouri law looks unfavorably on conduct that obstructs Mother's rights under the Consent Judgment. We further caution Mother that our holding does not preclude Grandparents from filing a petition for termination of parental rights and adoption of K.J.L. in the future should Mother's future conduct constitute abandonment or neglect.

13